Dear Chief Gallow:
You have asked this office to advise whether a full-time, commissioned police officer employed by the Opelousas Police Department may also hold private employment as a licensed bounty hunter.[1]
Note first that the provisions of the Dual Offficeholding and Dual Employment Law, R.S. 42:61 et seq., have no application in this matter. These statutes are only implicated where an individual contemplates holding two public offices and/or employments; such is not the case here, as one position is held in the private sector.
Bounty hunters are in the business of apprehending fugitives from justice, and exercise arrest authority pursuant to their contractual agreement with bail bondsmen.[2] See also Attorney General Opinion 99-119, discussing the authority of bounty hunters.
A commissioned police officer exercises arrest authority over those suspected of jumping bail, a criminal offense under R.S. 14:110.1.[3]
When arresting a fugitive in his employment as bounty hunter, he discharges those duties otherwise required of him in *Page 2 
his public employment as a police officer, and receives compensationfrom private sources for doing so. This circumstance may implicate the prohibition of R.S. 42:1111(A)(1) of the Code of Governmental Ethics, applicable to police officers as public servants, which provides in pertinent part:
 A. (1) Payments for services to the governmental entity. No public servant shall receive anything of economic value, other than compensation and benefits from the governmental entity to which he is duly entitled, for the performance of the duties and responsibilities of his office or position. . . .
Questions concerning the application of the Code of Governmental Ethics R.S. 42:1101, et seq., are addressed by advisory ruling of the Louisiana State Board of Ethics, 2415 Quail Drive, Baton Rouge, LA 70808, phone: 225-763-8777. We suggest you consult the Board for a final resolution of your question.
If you have other questions in which we may provide assistance, please contact this office.
 Very truly yours, JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 By: ________________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
 KLK:arg *Page 3 
 ATTACHMENT Opinion No. 99-119 8 Bonds — Surely 71 Municipalities
La.C.Cr.P. art. 345
Attorney General Opinion No. 96-85
Attorney General Opinion No. 81-253
State v. Everett, 530 So.2d 615 (La.App. 3 Cir. 1988)
Local law enforcement officers may assist bounty hunters in locating and apprehending fugitives within their jurisdiction.
 Mr. Siggie Silvie, Jr. Assistant Chief of Police City of Natchitoches P.O. Box 37 Natchitoches, Louisiana 71458-0037
Dear Mr. Silvie:
Your request for an Attorney General's Opinion was forwarded to me for research and reply. In particular, you have asked the following questions:
 1) On what authority do bounty hunters act, and are there restrictions upon that authority?
 2) May local law enforcement officers assist bounty hunters in locating and arresting fugitives within their jurisdiction?
In order to understand the authority of bounty hunters, one must examine the role of bail bondsman in criminal procedure. As stated in Attorney General Opinion No. 96-85, a bail bondsman, upon posting bail for a defendant, enters into a suretyship with the State, and thereby becomes the surety who is responsible for the principal's appearance in court. A breach of the contract leads to a monetary judgment against the surety. It is only through this contractual relationship with the defendant and the State that the bondsman, as surety, is given any authority over the defendant. This limited authority is granted to bondsmen in La.C.Cr.P. art. 345 (A), which states in part:
 For the purpose of surrendering the defendant, the surety may arrest him.
It is at this point that the bounty hunter becomes part of the process. The surety bondsman enters into a contractual agreement with the bounty hunter to find and arrest the fugitive for a fee. Thus, bounty hunters act upon the authority given to them by bail bondsmen. As for the limits of this authority, there is very little regulation of these bounty hunters, either in their certification or their methods for arresting fugitives. There are several Louisiana cases, however, which clearly state that the methods employed by these bounty hunters must be reasonable. See State v. Everett, 530 So.2d 615 (La.App. 3 Cir. 1988). *Page 4 
Your second question asks whether local law enforcement officers are legally permitted to assist bounty hunters in locating and apprehending fugitives within their jurisdiction. For the reasons which follow, it is the opinion of this office that such local authorities may certainly assist bounty hunters in this manner. In Attorney General Opinion No. 81-253, this office opined that not only is such cooperation anticipated, but it is a preferred alternative to the bounty hunter acting alone. Peace officers, including municipal law enforcement officers, are granted broad authority to locate and apprehend fugitives within their jurisdiction. Furthermore, one could argue that the cooperation between law enforcement and bounty hunters is essential to public safety, in that it facilitates the removal of fugitives from the general public. Please note that in certain circumstances, bounty hunters would have to comply with the Louisiana law on extraditions, La.C.Cr.P. art. 261 et seq.
In conclusion, bounty hunters derive their authority to arrest fugitives from their contractual agreement with bail bondsmen, who are granted their power to arrest in La.C.Cr.P. art. 345. Also, it is the opinion of this office that local law enforcement officers may assist bounty hunters in finding and arresting fugitives within their jurisdiction.
I hope that this opinion has adequately addressed your needs. If we may be of further assistance, please do not hesitate to contact us. With warmest regards, I remain
 Sincerely, RICHARD P. IEYOUB Attorney General
 BY: ___________________ ANN EVANS WALL Assistant Attorney General *Page 5 
 ATTACHMENT
Westlaw.
La. Atty. Gen. Op. No. 81-253, 1981 WL 155308 (La.A.G.)
La. Atty. Gen. Op. No. 81-253, 1981 WL 155308 (La.A.G.)
 Office of the Attorney General State of Louisiana Opinion No. 81 253 March 11, 1981.
5-ARREST
8-BAIL-SURETY
By private person; duties and powers. (1.) Bail bondsmen may arrest a fugitive in Louisiana when he is surety for that fugitive, he cannot authorize private citizen to arrest such a fugitive; (2.) Person so arrested should be booked into nearest jail in parish where arrested, otherwise bail bondsman, for violating his booking procedure, could be subject to contempt charges or obstruction of court order; (3.) Bail bondsmen are not peace officers, however, they must comply with bondsmen are not peace officers, however, they must comply with the extradition laws and statutes on the use of force, weapons, etc. Art. v. § 2, La.Constitution; Art. I, § 11, La.Constitution R.S. 14:95; 14:95.1;14:133.1 C.Cr.P. Articles: 12, 20, 25, 207, 214, 219, 220, 224, 226, 228, 265, 266, 269, 270, 338 and 340.
Honorable Salvador J. Lentini Chief of Police
Dear Chief Lentini:
In response to your letter of February 12, 1981, I enclose herewith a copy of a previous Attorney General Opinion No. 75-1309, that answered the same or similar questions you had regarding the authority for arrest of defendants/principals by their bondsmen/sureties.
Your remaining unanswered questions, as I understand them, are as follows:
 1. If the surety does not bock his principal at the nearest jail (as required under previous Attorney General Opinion No. 75-1309), may the surety be arrested for kidnapping?
 2. Can a bondsman arrest a subject in Louisiana for a bond posted in another state? If so, is extradition necessary? *Page 6 
 3. Does a bondsman have a right to bear arms to effect an arrest?
 4. What force is allowed to effect the arrest?
Since bondsmen have the statutory authority to arrest their principals for the purpose of surrender (Art. 340 La.C.Cr.P. and Attorney General Opinion No. 75-1309), a corresponding duty to make a proper surrender after arrest exists. Article 338 of the Louisiana Code of Criminal Procedure provides in pertinent part `a surety may surrender the defendant. . ., to the officer charged with his detention, . . .' (Emphasis added). The official comments following this article states that `the official to whom the surrender must be made is the officer to whose custody the defendant was or would have been committed.'
However, from a reading of Articles 228 and 207 of LSA-C.Cr.P. `peace officers' have a duty to book the person arrested at the nearest jail or police station.
In view of Attorney General Opinion No. 75-1309, a resolution of the above apparent conflict has been to impliedly define the phrase `office charged with his detention' as the officer who would have received the arrestee for regular booking after arrest by a peace officer. This should not be construed as including bondsmen within the definition of peace officers.
By analogy to the situation of a peace officer failing to book his prisoner promptly at the nearest jail, one can arguably determine the penalties for such conduct on the part of bondsmen. The official comments to LSA-C.Cr.P. Article 228 indicates that a violation of the booking procedures by peace officers would constitute malfeasance in office under La.R.S. 14:134. However, since bondsmen are not `peace officers or public officials' per se, they could not be charged with malfeasance. They may however be subject to contempt proceedings or obstruction of court orders, depending upon the circumstances and seriousness of the misconduct complained of for failing to properly surrender their principals. Rf: La.Const. of 1974 Art. V. Section 2; LSA-C.Cr.P. Art. 17,20 to 25 and R.S. 14:133.1 as amended.
*2 Accordingly, given the surety's statutory power to arrest his principal for surrender purposes, an impropriety in the booking or surrender procedure would not constitute kidnapping. This conclusion is reached based upon the aforementioned analogy and upon the assumption that there is a surrender of some type. The situation of no surrender at all could, for sake of argument, cause one to consider such a flagrant violation as either kidnapping or false imprisonment, dependant upon the circumstances of each case.
Relative to out of state bondsmen's power to arrest a fugitive in Louisiana, kindly refer to LSA-C.Cr.P. Articles 340, 214, 219, 265, 266
and 270.
A reading of Article 340 of the C.Cr.P. indicates that for purposes of surrending him, the surety may arrest him. This has been interpreted to mean that the principal may be arrested by his own surety for jumping bail. See Attorney General *Page 7 
Opinion No. 75-1309. Note here also that Article 214 of the C.Cr.P. allows for arrest of a felon by a private person and Article 219
provides for arrest by a private person while assisting a peace officer. While not specifically granting any general power of arrest upon out of state bondsmen, these articles would indicate limited powers of arrest in specified situations.
But these articles should also be read in conjunction with LSA-C.Cr.P. Articles 265, 266 and 270 that further limit the powers of arrest in extradition cases. Articles 265 directs `peace officers' to execute the governor's warrant of arrest against a fugitive for extradition purposes. Article 266 authorizes any peace officer to arrest the accused in the state with the aid of other peace officers or persons in the execution of the governor's warrant (Emphasis added). Article 269
empowers a judge with criminal jurisdiction to issue a fugitive arrest warrant `when on the oath or affidavit of a credible person, . . . the person to be arrested is charged with: (1.) Being a fugitive from justice of another state; (2.) Commission of a crime in another state; or (3.) Having been convicted . . . in another state, and having escaped from confinement or having broken the terms of his bail . . .' (Emphasis added).
Accordingly, while out of state bondsmen may under limited circumstances arrest their principals, our code would require compliance with extradition articles noted above in the same manner as done by peace officers. The preferred method suggested by these codal articles would be for the bondsmen to request the assistance of a peace officer in getting warrants of arrest issued. However, assuming an NCIC wanted bulletin has been placed for a fugitive's arrest, the fugitive may be arrested by his surety/bondsman for breaking the terms of his bail undertaking. Rf: LSA-C.Cr.P. Articles 340 and 269(3). Immediately after such an arrest, the bondsman should turn his principle over to the local jail/court for extradition proceedings.
It is also our opinion that while it is the constitutionally protected right of each citizen to keep and bear arms, there is no authority that would allow bondsmen in Louisiana to carry weapons concealed on their person. LSA-Constitution 1974 Article I, Section 11, R.S. 14:95 and14:95.1. A bondsman going through the proper channels, who becomes specially commissioned by the Department of Public Safety or comparable law enforcement agency with such powers, may be authorized to carry concealed weapons for limited specified pruposes. And then even when authorized to carry weapons, a bondsman could only use his weapon to make an arrest of his principal when he has sufficient reasons to believe his life or others are seriously threatened and in jeopardy at the time, and the use of deadly force is needed to counter deadly force.
*3 We refer you to LSA-C.Cr.P. Articles 220, 224, 226, and 227 in answering what force is allowed the bondsman to effect an arrest of his principal.
Article 220 of the Louisiana Code of Criminal Procedure provides: *Page 8 
. . . the person making lawful arrest may use reasonable force to effect the arrest and detentiion, and also to overcome any resistance or threatened resistence of the person being arrested or detained.
Article 224 of the C.Cr.P. allows `. . . a peace officer, . . .'to make forcible entry into `any . . . structure . . .' in making an arrest.
Article 226 of the C.Cr.P. and the official comments thereunder, places a duty upon private persons making arrests to turn their prisoner and his effects over to a peace officer.
Article 227 of the C.Cr.P. provides for rearrest after the prisoner escapes by authorizing pursuit and rearrest at any time and in any place within the state.
Accordingly, a bondsman as a private person may use reasonable force in arresting his principal but may not make forcible entry into any dwelling, vehicle or other structure without the assistance of a peace officer.
We trust that your questions have been sufficiently answered by this opinion. Should you need further assistance, please feel free to contact this office.
 Sincerely, William J. Guste, Jr. Attorney General
 BY: ______________________ Ivan L. R. Lemelle Assistant Attorney General
La. Atty. Gen. Op. No. 81-253, 1981 WL 155308 (La.A.G.)
 END OF DOCUMENT *Page 9 
 ATTACHMENT
Ciatiation
La. Atty. Gen. Op. No. 96-85
1996 WL 387368 (La.A.G.)
 Office of the Attorney General State of Louisiana Opinion No. 96-85 April 9, 1996.
47 — Fines, Forfeitures and Penalties
8 — Bonds-Surety
La.C.Cr.P. Art. 345(A); La.C.Cr.P. Art. 204; La.R.S. 15:571.11; La.R.S.
9:3576.5; La.R.S. 15:574. 20(D) (1).
A municipality may not procure the service of a bail bondsman in order to collect on unpaid bench warrants.
Ms. Peggy C. Savoy
Mayor
Village of Port Vincent
18235 LA Hwy 16
Port Vincent, LA 70726
Dear Ms. Savoy:
Your request for an attorney general opinion has been forwarded to me for research and reply. Specifically, you have asked the following question:
May a municipality employ a bail bondsman to enforce unpaid bench warrants?
A bail bondsman, upon posting bail for a defendant, enters into a suretyship with the state. State v. Bailey, 567 So.2d 721. The bondsman thereby becomes th surety and is responsible for the principal's appearance in court. Breach of this contract will lead to a monetary judgment against the surety. Supra. The bondsman enters into a contractual relationship with the defendant and with the state. It is only through this contractual relationship with a particular defendant and the state that the bondsman, as surety, is given any authority over that particular defendant. This limited authority is clear in La.C.Cr.P. Art. 345(A) which states in pertinent part, "For the purpose of surrendering th defendant, the surety may arrest him."
A bench warrant is an order for the attachment or arrest of a person. In Louisiana, only a peace officer has the authority to execute a warrant. La.C.Cr.P. Art. 204. The arrest authority given to a bondsman through a contract o suretyship and La.C.Cr.P. Art. 345(A) is an exception to this general rule. This authority is vested only by the suretyship and only in order to procure th presence in court of the defendant with whom the bondsman formed the contract.
After a defendant has been assessed a fine, La.R.S. 15:571.11 provides that fines and forfeitures shall be collected by the sheriff or officer of the court La.R.S. 9:3576.5 further provides that while other public debts owed by a person may be contractually collected by licensed and bonded collection agencies, debts from outstanding bench warrants, parking fines and traffic violations are specifically excepted from this provision. Collection agencies *Page 10 
are businesses whose function is to collect unpaid and overdue debts. If these businesses are prohibited from collecting on unpaid bench warrants, it logicall follows that only those whom the law authorizes to collect these fines are allowed to do so. Furthermore, La.R.S.15:574.20(D)(1) provides, "No elected official shall have any business arrangement with a bail bonding company." This provision expressly prohibits the type of relationship which you are seeking. Thus, it is the opinion of this office that a municipality may not procure the services of a bail bondsman in order to collect on a bench warrant.
If our office can be of any further assistance, please do not hesitate to contact us. With kindest regards, I remain
 Very truly yours, Richard P, Ieyoyb Attorney General
 Frederick A. Duhy Assistant Attorney General
La. Atty. Gen. Op. No. 96-85, 1996 WL 387368 (La.A.G.)
END OF DOCUMENT
[1] Bounty hunters must be licensed through the Louisiana Department of Insurance. See the Louisiana Administrative Code, Chapter 49, Regulation 65, entitled "Bail Bond Licensing Requirements/Bounty Hunter".
[2] Bail bondsmen have arrest authority under C.Cr.P. Art. 345, stating "for the purpose of surrendering the defendant, the surety may arrest him".
[3] R.S. 14:110.1 states:
 A. Jumping bail is the intentional failure to appear at the date, time, and place as ordered by the court before which the defendant's case is pending. If the state proves notice has been given to the defendant as set forth in C.Cr.P. Art. 322 and 344, a rebuttable presumption of notice shall apply, and the burden of proof shifts to the defendant to show that he did not receive notice. The fact that no loss shall result to any surety or bondsman is immaterial.
 B. Whoever commits the crime of jumping bail when the bail is to assure the presence of the defendant for those cases defined as misdemeanors in this Title and in the Uniform Controlled Dangerous Substances Law shall be imprisoned for not more than six months, or fined not more than five hundred dollars, or both.
 C. Whoever commits the crime of jumping bail when the bail is to assure the presence of the defendant for those cases defined as felonies in this Title and in the Uniform Controlled Dangerous Substances Law shall be imprisoned at hard labor for not more than two years.